**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RONALD J. UCCARDI**, | |
| Plaintiff, | No.    18 CV 2424 |
| v. | Judge Gettleman |
| **LAZER SPOT, INC.**, | Magistrate Judge Cole |
| Defendant. | |

**MOTION TO COMPEL PLAINTIFF TO PROVIDE
RESPONSES TO DISCOVERY AND/OR FOR DISCOVERY SANCTIONS**

Defendant, Lazer Spot, Inc. ("Lazer Spot"), moves this Court to compel Plaintiff Uccardi to provide adequate responses to discovery requests and/or to be sanctioned for his discovery noncompliance per FRCP 37. As grounds for this motion, Lazer Spot states as follows:

**Background of Motion**

1. Lazer Spot served Uccardi with First and Second Document Production Requests, Interrogatories, and Requests to Admit. On April 24, 2019, Lazer Spot sent Uccardi's counsel (hereinafter referred to simply as "Uccardi") a release form to sign to obtain his tax returns. At the Settlement Conference on May 1, 2019, the parties discussed the lack of production of plaintiff's tax records, phone records, emails and prior employer information, and this Court made preliminary orders requiring the production of these records. Those rulings were contained in a court order entered after the conference.

2. On May 9, 2019, Lazer Spot followed up its attempts to secure the records by sending a Rule 37 letter raising the issues discussed at the conference and other issues with Uccardi's discovery responses. *See* Exhibit A. This letter requested responses within 14 days. Uccardi did not respond to the letter whatsoever. On June 18, 2019, Lazer Spot sent another Rule 37 letter, noting that Uccardi never responded to the May 9 letter and seeking an immediate

telephone call to satisfy its meet and confer obligations. *See* Exhibit B. Uccardi was not available for a call until July 1, 2019.

3. The meet and confer took place by telephone on July 1, 2019, and Lazer Spot requested supplementation by Uccardi by July 8, 2019, since there is a pending discovery cut-off date of August 2, 2019, and depositions were set to begin on July 11, 2019. Uccardi has failed to supplement the documents produced or to file amended responses stating that no such documents exist. Lazer Spot needs closure on these issues before discovery is closed.

### The Specific Deficiencies

4. Plaintiff's Tax Returns: Lazer Spot sent Uccardi a consent form to sign in April to obtain his tax records. He was ordered to produce the records on May 1. Neither task was accomplished. During the meet and confer, Uccardi agreed to produce the records. To date, Lazer Spot has not received the records or a signed authorization to obtain the records. At best, it will be extremely difficult to obtain the records by the date scheduled for Uccardi's deposition, which is July 23, 2019.

5. HIPPA Order: When Lazer Spot received the medical records from Loyola, the doctor's records referenced a positive cocaine test by Uccardi in early 2015. Within weeks after Uccardi informed the treater that he routinely used cocaine, Uccardi applied for a medical certification to obtain a Medical Card, which Lazer Spot required for operators of commercial vehicles. The portion of the long form medical summary that Uccardi was required to complete contained specific questions about drug and alcohol use. If those questions were answered accurately and consistent with the information in the Loyola records, a Medical Card would not have been issued by the Certifier. We have requested a HIPPA form consent for Concentra to obtain additional records of the examination and testing. Lazer Spot has informed Uccardi that it

intends to raise an after acquired evidence defense. Uccardi refused this request as "too attenuated."

6. <u>Phone records</u>: Uccardi was ordered at the conference to produce the Yahoo email account records which he apparently subpoenaed. He was also directed to produce phone records that might substantiate his claims that he called Lazer Spot during the FMLA time period he was on FMLA leave. Uccardi has responded that he believes he has the records from Yahoo but is unable to locate them. He also stated that he has not subpoenaed the other records because he does not know the carrier. When questioned further, his counsel had several excuses and directed Lazer Spot to ask Uccardi about the phone records at his deposition. This response underscores the difficulties Lazer Spot has had with obtaining the documentation Uccardi is relying on in his Complaint.

7. <u>Past employers</u>: At the conference, Uccardi agreed to produce information about the five most recent employers. He has not done so to date.

8. <u>Prospective employers</u>: Lazer Spot is entitled to know what efforts Uccardi has made to mitigate his damages and has requested damages regarding his attempts to secure employment. Uccardi's counsel has responded that he requested information from his client but has not received anything. Uccardi's counsel then responded that Lazer Spot should ask Uccardi questions about his attempts to seek work at his deposition. If Uccardi has no records, then that is the response, *i.e.*, that he has no evidence to support his claims that he applied for jobs after his termination at Lazer Spot. If he does have records, Lazer Spot is entitled to the documents.

9. <u>Contacts with Lazer Spot</u>: In various discovery requests and in the requests to admit, Lazer Spot asked for identification of each Human Resources professional that Uccardi allegedly spoke to and some degree of timing (e.g., before or after termination), and content of

the calls as well as documents pertaining to contacts with Lazer Spot. Lazer Spot also requested the persons who actually made the contacts, because Uccardi stated that his daughter or girlfriend may have made the calls. No specific information has been provided. Uccardi's only response was that his daughter called "someone" in "Georgia" and that he spoke to an HR professional at Lazer Spot.

10. The information that Uccardi has not produced and/or has refused to produce go to the crux of his FMLA interference and retaliation claims, *i.e.*, contacts with Lazer Spot during his leave, documents that he provided to Lazer Spot, and emails, texts and phone records documenting his alleged contacts. He has also not produced documents relating to his damages or his attempts to mitigate his damages, and has not amended his responses to indicate that no such documents exist.

11. Discovery cut-off in this case is August 2, 2019. Uccardi's tactic is clearly to delay until his deposition proceeds to stymie Lazer Spot's entitlement to discovery.

WHEREFORE, Lazer Spot, Inc. requests that this Court require Uccardi's full disclosure pursuant to this motion by July 19, 2019, and/or for discovery sanctions barring any evidence at trial relating to the documents on elements of his case that have not been produced, including back pay, front pay, and Uccardi's contacts with Lazer Spot's agents.

Respectfully submitted,

**LAZER SPOT, INC.**

s/ Carrie A. Durkin
Carrie A. Durkin

Carrie A. Durkin
Victoria Vanderschaaf
Litchfield Cavo LLP
303 W. Madison Street, Suite 300
Chicago, IL 60606
Phone: 312-781-6610 (Durkin)
Phone: 312-781-6680 (Vanderschaaf)
Fax: 312-781-6630
durkin@litchfieldcavo.com
vanderschaaf@litchfieldcavo.com



| | |
|---|---|
| # LITCHFIELD<br>Attorneys at Law  CAVO LLP | **WRITER'S ADDRESS:**<br>303 West Madison Street<br>Suite 300<br>Chicago, IL 60606-3300<br>(312) 781-6610<br>(312) 781-6630 (Fax) |

Carrie A. Durkin
Email: durkin@litchfieldcavo.com

May 9, 2019

**VIA US MAIL AND EMAIL**

Mr. Paul Luka
Mendoza Law P.C.
120 S. State Street, Suite 400
Chicago, Illinois 60603
paul@mendozalaw.net

      Re:    *Ronald Uccardi v. Lazer Spot, Inc.*
               Northern District of Illinois – Eastern Division; Case No.: 2018-CV-2424

Counsel:

As you are aware, this office represents the Defendant in the above-captioned matter. On March 24, 2019, we received Plaintiff's Answers to Lazer Spot's Interrogatories. Lazer Spot's Interrogatories were propounded on Plaintiff with the intent of establishing specific facts to provide Lazer Spot with the opportunity to investigate those facts and prepare for future depositions. Plaintiff's Answers to Lazer Spot's Interrogatories provide almost no information other than select phone records. We would like to resolve outstanding issues with these interrogatory responses.

**A. Interrogatory Responses Re: Communications and Documentation**

**Interrogatory No. 3** requests that Plaintiff identify all communications he has had with any person regarding the allegations raised in his Complaint "by date, means of communication, the parties to the communication, and the substance of the communication..." Some of the largest issues in contention in this case are the extent of Plaintiff's communications with Lazer Spot regarding his leave and the information Lazer Spot conveyed to Plaintiff regarding his leave. Plaintiff's response is too vague to constitute a answer under the discovery rules. Plaintiff repeatedly refers Lazer Spot to his phone records. A significant number of the calls highlighted on Plaintiff's phone records were either no longer than two minutes in length, made to a switchboard number or made to a number that was not in service. Lazer Spot cannot discern whether Plaintiff spoke to anyone during these alleged communications, who he spoke to or anything about the substance of the communications. Plaintiff alleges that he had text message exchange(s) with Mike Huddleston (incorrectly referred to as "Mike Huddlestead") but gives

---

Chicago • Hartford • Boston • New York • New Jersey • Pittsburgh • Philadelphia • Houston • Los Angeles • Fort Lauderdale
Tampa • Wisconsin • West Virginia • Salt Lake City • Indiana • St. Louis • Atlanta • Providence • Las Vegas

www.litchfieldcavo.com

**EXHIBIT A**

**LITCHFIELD**
Attorneys at Law **CAVO** LLP

May 9, 2019
Page 2

absolutely no information regarding what was discussed or why the text message(s) are currently unavailable in disregard of Lazer Spot's instructions to its Interrogatories. Lastly, while it is understandable that Plaintiff may not remember the exact date of any alleged communications that occurred in person or via text, the Interrogatories request Plaintiff provide at least an approximate date. Understanding the timeline of when Plaintiff alleges to have communicated with Lazer Spot is critical to resolving or litigating this matter. It is consequential whether Plaintiff alleges to have communicated with Lazer Spot during the time period that Lazer Spot contends Plaintiff was nonresponsive to its communication efforts. Please provide complete information responsive to Interrogatory No. 3.

**Interrogatory No. 4** requests the phone number Plaintiff contends to have called in order to speak to "the HR Rep." Please identify which of the phone calls highlighted in Plaintiff's phone records resulted in conversations with "the HR Rep." Plaintiff has only identified one alleged conversation with "the HR Rep" (believed to be Ashley Johnson f/k/a Lopez) during which she told him "not to worry" and that his time off "would be covered under the FMLA" as long as he submitted a note from his physician stating that he needed to be off work. Plaintiff contends that this alleged conversation forms the basis for his promissory estoppel claim. Yet, Plaintiff's response states that he "believes that he spoke most often with Ashley Lopez..." Any conversations that Plaintiff had with "the HR Rep" are material in that they directly impact the analysis of each of the elements of Plaintiff's promissory estoppel claim. Please provide complete information responsive to Interrogatory No. 4.

**Interrogatory No. 6** requests that Plaintiff detail the numerous occasions that he submitted documentation to Lazer Spot. While the request specifically asks for approximate dates that any documentation was alleged to have been submitted and a summary of their contents, Plaintiff **completely fails** to provide this information. An issue in dispute in this case is whether Plaintiff provided the appropriate documentation to Lazer Spot. It is Lazer Spot's position that the only documentation related to Plaintiff's leave that was provided are the three doctors' notes that have been produced. Lazer Spot is entitled to know whether Plaintiff contends he submitted any additional documentation. Plaintiff also alleges to have provided documentation to Mike Huddleston, Adam Chase and Mary Goldaneh (incorrectly referred to as "Mary Luby") but ignores Lazer Spot's request to provide a date, manner in which it was submitted and whether he received confirmation of receipt. Without such information Lazer Spot is severely prejudiced in its efforts to investigate Plaintiff's claims. Please provide complete information responsive to Interrogatory No. 6.

**Interrogatory No. 7** requests that Plaintiff detail his alleged "numerous requests for direction." Plaintiff's response is again impermissibly vague. Lazer Spot cannot ascertain whether Plaintiff actually spoke to anyone, what his specific requests for direction were or to whom amongst Lazer Spot's "personnel," his daughter and/or girlfriend conducted the conversation Please supplement Plaintiff's response to Interrogatory No. 7 to allow Lazer Spot to identify individuals that may have relevant information for purposes of taking depositions.

**EXHIBIT A**



**LITCHFIELD CAVO LLP**
Attorneys at Law

May 9, 2019
Page 3

## B. Interrogatory Responses Re: Mitigation of Damages

**Interrogatory No. 13** requests that Plaintiff provide information on the job positions he held prior to his employment for Lazer Spot. Plaintiff stated various objections and did not respond to the substance of the interrogatory. Your breakdown of Plaintiff's damages reflects that most of his claim is for front pay making Plaintiff's experience and prior positions crucial to the scope of potential employment. You have also taken the position that Plaintiff has made "diligent attempts to find other employment" yet he has been unable to do so. While Lazer Spot is willing to narrow the timeframe to Interrogatory No. 13 to elicit information on positions in the last ten years, it disagrees with your objections. Plaintiff's recent job history is extremely relevant to Lazer Spot's affirmative defense that he has failed to mitigate his damages. This is especially true as Plaintiff has contended that he has been "unable to secure employment commensurate with his that which he enjoyed at Lazer Spot." Please provide complete information responsive to Interrogatory No. 13.

**Interrogatory No. 14** requests that Plaintiff provide information on the job positions he has held since his separation of employment from Lazer Spot. While Plaintiff has responded that he was self-employed he has not identified the date he began self-employment nor given any description of what type of work he is doing. Again, this information is relevant to Lazer Spot's mitigation of damages affirmative defense. Please provide complete information responsive to Interrogatory No. 14.

**Interrogatory No. 15** requests that Plaintiff provide information regarding his efforts to find employment after his separation of employment with Lazer Spot. Plaintiff has vaguely responded that he has "made many attempts to secure employment" yet has not produced a single document in support of that claim. Interrogatory No. 15 warrants a more detailed response. As Interrogatory No. 15 requests, please provide "the names of all potential employer with whom you made an application of employment, dates of submission of such application of employment, whether the application was made in writing or orally, and with whom you spoke or corresponded in connection with employment."

## C. First Set of Requests for Production of Documents

Plaintiff's response to Lazer Spot's **First Set of Requests for Production of Documents No. 21** states that Plaintiff is seeking to obtain information pertaining to telephone number 815.439.7997. Please provide an update as to the status of these efforts.

Lastly, on April 24, 2019, you were sent a request that Plaintiff sign his consent for us to receive his tax returns for the relevant time period. Please provide an update as to the status of this.

The foregoing points and examples are not intended to be exhaustive or to be argumentative but only to illustrate the reason for our requests that Plaintiff provide particularized information in response to Lazer Spot's Interrogatories and Requests for Production of Documents so that we can fully understand his claims.

**EXHIBIT A**

**LITCHFIELD CAVO** LLP
Attorneys at Law

May 9, 2019
Page 4


We are sending you this correspondence in the spirit of Local Rule 37.2. Pursuant to this rule, please forward your compliance with Lazer Spot's discovery requests within the next 14 days to avoid our presenting a motion.

Very truly yours,

*[signature]*

Carrie A. Durkin

**EXHIBIT A**



| | |
|---|---|
| # LITCHFIELD<br>―――――――― CAVO LLP<br>Attorneys at Law | **WRITER'S ADDRESS:**<br>303 West Madison Street<br>Suite 300<br>Chicago, IL 60606-3300<br>(312) 781-6610<br>(312) 781-6630 (Fax) |

Carrie A. Durkin
Email: durkin@litchfieldcavo.com

June 18, 2019

**VIA US MAIL AND EMAIL**

Mr. Paul Luka
Mendoza Law P.C.
120 S. State Street, Suite 400
Chicago, Illinois 60603
paul@mendozalaw.net

      Re:    *Ronald Uccardi v. Lazer Spot, Inc.*
              Northern District of Illinois – Eastern Division; Case No.: 2018-CV-2424

Counsel:

This is Defendant's second Rule 37 correspondence regarding the above-captioned matter. We have not received a response from you regarding our first Rule 37 correspondence which was sent on May 9, 2019 addressing the lack of information contained within Plaintiff's responses to Lazer Spot's Interrogatories and Requests for Production. Following receipt of Plaintiff's vague Answers to Defendant's Request for Admissions, Lazer Spot continues to seek information it requires to efficiently begin and proceed with oral discovery. We continue to seek to resolve outstanding issues with Plaintiff's discovery responses without intervention of the Court.

**Plaintiff's Tax Returns:**

You represented at the May 1, 2019 Settlement Conference that you would obtain the unredacted versions of Plaintiff's full tax returns for the relevant time period that were first requested by us on April 24, 2019. We again request that you provide these records immediately since they rare essential for Plaintiff's deposition.

**Plaintiff's Past Employers:**

Similarly, you also represented at the May 1, 2019 Settlement Conference that you would provide us with a list of Plaintiff's five most recent employers. Please provide us with this list.

---

Chicago • Hartford • Boston • New York • New Jersey • Pittsburgh • Philadelphia • Houston • Los Angeles • Fort Lauderdale
Tampa • Wisconsin • West Virginia • Salt Lake City • Indiana • St. Louis • Atlanta • Providence • Las Vegas

www.litchfieldcavo.com

**EXHIBIT B**

**LITCHFIELD CAVO** LLP
Attorneys at Law

June 18, 2019
Page 2

**Subpoenas for Phone Records:**

Plaintiff was purportedly unable to admit or deny a significant portion of Plaintiff's Answers to Defendant's Request for Admissions because he cannot recall facts that are material to both the prosecution and defense of this case. Instead, Plaintiff states that additional telephone records he subpoenaed should help him ascertain the facts. Plaintiff filed his Complaint on February 28, 2018. Since that date, the documents produced to us only reflect that Plaintiff subpoenaed Apple for phone records in late 2018. Curiously, the subpoena reflects that phone records were subpoenaed for telephone number 779.702.4974 which is neither of the telephone numbers Plaintiff provided to Lazer Spot (815.439.7997 and 815.768.9420) nor the telephone number that Plaintiff claims to use (815.768.7407). Please explain to us why the phone records were subpoenaed for this telephone number, whether any subpoenas have been issued for the other three telephone number records and advise as to the status of any such subpoenas. We also request that you provide us with any corresponding documents as at this time we only have Plaintiff's subpoena to Apple and Apple's unsubstantive response. We believe that the information contained in these phone records is critical to either resolving or litigating this matter. It should be noted for purposes of your response that we have recently received the phone records within Lazer Spot's control and are currently in the process of reviewing them to produce relevant portions.

**Plaintiff's Answers to Defendant's Request for Admissions:**

Per Rule 36 of the Federal Rules of Civil Procedure, which governs Requests for Admissions, "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it…The answering party may assert lack of knowledge or information as a reason for failing to admit or deny **only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.**" (emphasis added)

Defendant's Request for Admissions Nos. 31-35 seek to ascertain whether any individuals acting on Plaintiff's behalf called various Lazer Spot employees to discuss his FMLA leave. While Plaintiff's Answers to these Requests state that he denies knowledge and information sufficient to admit or deny, they do not reflect that Plaintiff has made a reasonable inquiry into information he can readily obtain. Plaintiff's interrogatory responses reflect that Michelle Uccardi and Candis Stopenbach transmitted "information concerning the plaintiff's medical condition and work status" to Lazer Spot and also assisted him in preparing his responses to Lazer Spot's Interrogatories. Plaintiff's interrogatory responses also indicate that Michelle Uccardi and Candi Stopenbach should be contacted through you. Since neither Michelle Uccardi or Candy Stopenbach appear to be your clients, we are unaware of any reason that they can be contacted only through you. Please provide contact information for each. Additionally, as Michelle Uccardi and Candi Stopenbach have information that you can readily obtain we request that you conduct a reasonable inquiry into Defendant's Requests for Admissions Nos. 31-35 by speaking to them. After you have spoken to them, please amend Plaintiff's Answers to Defendant's Request for Admissions Nos. 31-35 to comply with Rule 36.

**EXHIBIT B**

**LITCHFIELD**
Attorneys at Law **CAVO** LLP

June 18, 2019
Page 3

We are sending you this correspondence in the spirit of Rule 37.2. Discovery is ordered to close on August 2, 2019. Because we have already received one extension to complete discovery we would like to avoid seeking a second. As such, please contact me to schedule a call to discuss this and our May 9, 2019, correspondence next week.

Very truly yours,

Carrie A. Durkin

**EXHIBIT B**