# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RONALD J. UCCARDI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 2424 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| LAZER SPOT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff has filed a Motion for Reconsideration [Dkt. #52] of my Order of July 16, 2019 [Dkt. #50], which granted the defendant's Motion to Compel production of discovery and which awarded defendant the costs incurred by the defendant in making the Motion to Compel. [Dkt. #46]. In that Motion, the defendant contended that the plaintiff had avoided compliance with discovery obligations and that even after a settlement conference on May 1, 2019 at which the plaintiff had been ordered to produce certain documents, the materials were not forthcoming. It was also contended that the plaintiff's counsel was unresponsive to inquiries about discovery. Although the plaintiff's counsel denied any impropriety, the motion was granted.

The Motion for Reconsideration strenuously argues that the plaintiff and his counsel were, in fact, responsive, and that the plaintiff, himself, responded as best he could given the claimed imperfect state of his memory. The Motion for Reconsideration, as amplified by the oral argument this morning, argued that the court should vacate the Order of July 16, 2019 and require that the $600 paid to reimburse the defendant for the costs it incurred in making the Motion to Compel be refunded. A number of reasons were offered in the Motion (and again at the hearing this morning)

for any alleged failings that occurred in discovery.[1] Among them are: plaintiff's counsel merged his practice with another Firm on January 1, 2017. But he concedes that was well over a year before he filed this case. The Motion also notes the paralegal's retirement, but concedes that he stayed on to train his replacement. It also refers to a friend to whom he had hoped to refer some of his cases, but who suffered a heart attack on June 11, 2019. But that was after the materials properly sought by the defendant should have been produced.

Also, the Motion states that social media had been slow in responding to the subpoenas; that the plaintiff insisted he could not recall the names of any of the defendant's employees that he allegedly called about his leave. He further claimed could not remember his daughter's phone number, and he claimed he lost his tax records, but did not promptly sign the requested authorization to enable the IRS to release copies of those records, etc. But, of course, "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). *Accord Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465 (7th Cir. 2018).

The plaintiff's discovery obligations required that his claimed of lack of memory be properly and promptly communicated to the defendant as the reason he was claiming for his less than edifying discovery responses. The parties continued to disagree about whether that occurred in a timely way and whether the plaintiff's counsel was responsive to inquiries and objections from the defendant. The arguments at this morning's hearing on the plaintiff's Motion to Reconsider did not convince either plaintiff's lawyer or defendant's lawyer that their positions on timeliness and responsiveness

---

[1] While plaintiff's counsel admitted that he perhaps had not always responded to the plaintiff's inquiries with dispatch, he insisted that for the most part he had been responsive to defense counsel's inquiries. The defendant's lawyer disagreed, thus showing the difficulty a court has in determining the real reasons for discovery lapses, including untimeliness in responding to emails and calls from opposing counsel. In this regard, see n. 2, *infra.*

in discovery were incorrect. Each maintained the rightness of their position.

What is certain, however, is that nowhere in the 15-page Motion for Reconsideration is there citation to any authority regarding the principles governing Motions for Reconsideration. A Motion for Reconsideration serves a limited function. Generally, such motions must be based on a manifest error of law or fact or on newly discovered evidence. *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir.2012). Importantly, they are not vehicles for "rehashing previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). Nor are they an opportunity "to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Miller v. Safeco Ins. Co. of America*, 683 F.3d 805, 813 (7th Cir. 2012). *See also Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018); *Winfield v. Dorethy*, 871 F.3d 555, 559 (7th Cir. 2017). All the plaintiff has done here is to revisit "explanations" already rejected, and present others that are not persuasive and ought to have been presented earlier. But, a "'Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *Cehovic-Dixneuf*, 895 F.3d at 932 (quoting Judge Shadur in *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)).[2]

---

[2] At some time this morning after the hearing on the Motion to Reconsider, the plaintiff's lawyer, without prior permission from the court, sent my courtroom deputy 52 pages of emails between the plaintiff's lawyer and the defendant's lawyer at various times in the past. The emails were apparently sent in support of the argument that he had been faithful and prompt in responding to emails from the defendant. Apart from the fact that the materials were sent without permission and without explanation, they should and could have been offered earlier at the time the plaintiff moved to compel. And they could have been submitted at the time the defendant filed its Motion to Compel. They even could have been submitted – although that still would have been too late under basic principles governing motions to reconsider. But they were not submitted earlier and they will not be considered.

As was said in the previous Order, a busy schedule – whatever the reason [and no persuasive reason has been shown here] – simply is not an excuse for failing in one's discovery obligations, which includes timely responses to inquiries from opposing counsel. *Iopa v. Saltchuk-Young Bros., Ltd.*, 916 F.3d 1298, 1302 (9th Cir. 2019); *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006). *See also United States v. Cates*, 716 F.3d 445, 449 (7th Cir. 2013); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012). "The excuse [of a busy and demanding schedule] rings even more hollow when those making it filed the case . . . ." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 WL 6694904, at *6 (N.D. Ill. 2018). In any event, plaintiff's counsel's merger with another firm – one of the reasons offered to explain plaintiff's lawyer's omissions – had occurred 15 months before he filed this case.[3] In October of 2018, over a year and a half after the merger, plaintiff's counsel agreed discovery would be completed by May 3, 2019. [Dkt. #22]. He later, on April 11, 2019, agreed that an extension to August 2, 2019 would be adequate [Dkt. # 29] – this seemingly with the knowledge of his paralegal's retirement. Points like this are exactly why courts do not accept "I'm too busy" as a valid excuse.

Nor is the fact that discovery is difficult and time-consuming a valid excuse for untimely responses. *See BankDirect Capital Fin*, 2018 WL 6694904, at *1); *Yeager v. Innovus Pharm., Inc.*, 2019 WL 447743, at *3 n.3 (N.D. Ill. 2019). In almost all cases, discovery is difficult and arduous

---

[3] In *Iopa*, the court rejected the argument that counsel experienced several challenges in managing his caseload, particularly following the departure of the associate who managed this case. As the Supreme Court has held that "we give little weight to the fact that counsel was experiencing upheaval in his law practice." *Pioneer*, 507 U.S. 380, 398 (1993). *See also In re Enron Corp.*, 419 F.3d 115, 126–27 (2d Cir. 2005) (holding a party being too busy with negotiations was not excusable neglect); *In re Harlow Fay, Inc.*, 993 F.2d 1351, 1352 (8th Cir. 1993) (holding counsel's relocation to a different state and reduction in staff was not excusable neglect). *Cf., Selph v. Council of L.A.*, 593 F.2d 881, 884 (9th Cir. 1979) (explaining that "excusable neglect is not meant to cover the usual excuse that the lawyer is too busy, which can be used, perhaps truthfully, in almost every case.").

and often painful. *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000). We "'must be mindful of the realities of modern litigation. Pre-trial discovery under modern federal practice has become a monster on the loose .... Pre-trial proceedings have become more costly and important than trials themselves.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986).[4] *Accord Bond v. Utreras,* 585 F.3d 1061, 1067 (7th Cir.2009); *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998); *Miller UK Ltd. v. Caterpillar, Inc*., 2013 WL 474380, 1 (N.D.Ill.2013).

A plaintiff is not forced to file a case any more than an attorney is required to take one on. While it is not counsel's fault that the plaintiff claimed an inability to recall the names of the people he talked to on the phone or to remember his daughter's phone number, or to recall any of the names of anyone he spoke to about a job or to supposedly having lost his tax records – as the plaintiff contended – it most assuredly is his lawyer's responsibility to promptly communicate difficulties to opposing counsel and to be responsive and timely in responding to legitimate inquiries from defense counsel about these claimed inabilities.

What is certain, however, is that for whatever reason the diligence and timeliness that should have been exhibited in this case was not always in evidence. The plaintiff's insistence that defense counsel were not always punctual may have some validity. But that is not the matter that is before me and, in any event, it is not an excuse for behavior that is questionable. If plaintiff's counsel had issues with the defendant's discovery production, the remedy was a Local Rule 37.2 conference, followed by, if necessary, a motion to compel. The appropriate course of action most assuredly was

---

[4] For the late Judge Will, one of the most respected district judges in the history of the Nation, "[p]art of the answer is more judicial involvement. We should no longer be willing just to sit up there and, when somebody commits a foul, call foul and give the other side two free throws. Judges need almost to treat it personally." Jeffrey Cole and Rob Shapiro, *An Interview With Judge Hubert L. Will*, 20 LITIGATION 26, 29 (1993). *See LM Ins. Corp. v. ACEO, Inc.*, 276 F.R.D. 592, 595–96 (N.D. Ill. 2011).

not to ignore the matter. "Litigants ...cannot ignore legitimate discovery requests.... *McDonald v. Hardy*, 821 F.3d 882, 890 (7th Cir. 2016). A busy schedule does not excuse late submissions, *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chicago*, 543 F. App'x 591, 594 (7th Cir. 2013), or the nonresponsiveness that is at least alleged to have occurred by the plaintiff.

While the Motion for Reconsideration asks that the award of fees to the defendant be set aside, it must be remembered that a motion to compel, once granted, entitles the movant to reimbursement. As Judge Easterbrook tells us: "'The great operative principle of Rule 37[] is that the loser pays.' ... Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims. Rickels lost and must pay." *Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 787 (7th Cir. 1994)(quoting Charles Alan Wright & Arthur R. Miller, 8 *Federal Practice and Procedure* § 2288 at 787 (1970)). *See also, Sambrano v. Mabus* 663 F.3d 879, 881-882 (7th Cir. 2011)("Sanctions such as orders to pay the other side's attorneys' fees may redress injuries done to put-upon adversaries...."); *United States Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 955 (2nd Cir.1983)("General deterrence, rather than mere remediation of the particular parties' conduct, is a goal under Rule 37; unconditional impositions of sanctions are necessary to deter 'other parties to other lawsuits' from flouting 'other discovery orders of other district courts.'"); *Fudali v. Napolitano,* 283 F.R.D. 400, 404 (N.D.Ill., 2012).

The plaintiff's Motion for Reconsideration does not fulfill ant of the demanding criteria that a must be met before a ruling ought be reconsidered. Nor does it provides any argument why there should be a departure from the operative principles of *Rickels*. As for whether plaintiff's alleged failings will result in evidence being barred at trial that is a matter for the trial judge – although it

is not apparent at all why granting the defendant's Motion to Compel and ordering the plaintiff to do certain things in connection with discovery should result in an exclusion of evidence. I certainly never held, nor did I contemplate that any evidence would be excluded at trial. That was not what the motion requested; nor was it the relief granted. In any event, exclusion of evidence is rarely a concomitant of a successful Motion to Compel.

The answer to the difficulties which led to the Motion to Compel is for lawyers to as promptly as possible communicate with opposing counsel and at least explain why an inquiry cannot be answered immediately and to explain the difficulties in fully responding. Not only is it good manners, it is good practice that often will prevent needless friction and ultimately unnecessary motion practice. *Cf. PNC Bank N.A. v. Hahjighi Family & Sports Med., P.A.*, 2016 WL 10876750, at *1 (M.D. Fla. 2016); *Baptists Health v. Smith*, 393 F. Supp. 2d 719, 720 (E.D. Ark. 2005); *Cole v. Richardson*, 2010 WL 2773584, at *2 (E.D.N.Y. 2010); *Shelton v. Family Dollar Stores of Indiana, LP*, 2007 WL 9760510, at *2 (S.D. Ind. 2007). And, if one's opponent is, in fact, uncooperative in discovery, the matter should be brought to the immediate attention of the court. *Parker v. Freightliner Corp.* 940 F.2d 1019, 1025 (7th Cir.1991)("...the record reveals that Parker never sought the court's help in curbing these alleged discovery abuses"). Or as Shakespeare more elegantly put it, "Defer no time delays have dangerous ends." Henry VI, Part I (1592) Act III, sc. ii 1.33.[5]

What the court said in *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC* bears repeating: "[p]arties always are burdened by discovery and the other requirements for the preparation

---

[5] The Seventh Circuit is partial to Twelfth Night. *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 775 (7th Cir.1995) (" 'In delays there lies no plenty.'"). No matter. The point is the same.

of a case. That is a consequence of our judicial system and the rules of civil procedure. There is no special burden here." 2019 WL 78933, at *2 (D. Colo. 2019). The Motion For Reconsideration [Dkt. # 52] is denied.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 7/23/19